**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

ROSA C. JOHNSON, personally and
as Personal Representative and
Administratix of the Estate of
Verlon M. Johnson, Sr., Deceased;
L.V.J., a Minor, by Rosa C.
Johnson, her Mother and Guardian;
L.Q.J., a Minor, by Rosa C.
Johnson, her Mother and Guardian;
V.M.J., a Minor, by Rosa C.
Johnson, his Mother and Guardian;
and V.J., a Minor, by Rosa C.
Johnson, his Mother and Guardian,

    Plaintiffs,

v.                        Civil Action No. 3:04cv340

THE CITY OF RICHMOND, VIRGINIA;
FORMER ACTING SERGEANT DAVID D. MELVIN,
in his Individual Capacity; DETECTIVE
WILLIAM J. BURNETT, in his Individual
Capacity; FORMER ACTING CHIEF OF POLICE
TERESA P. GOOCH, in her Individual
Capacity; CITY MANAGER CALVIN D.
JAMISON, in his Individual Capacity,

    Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on Defendant William J. Burnett's Motion for Summary Judgment (Docket No. 69). For the reasons set forth below, the motion is granted.

**I.**

On May 14, 2004, Rosa C. Johnson, wife of the decedent Verlon Johnson, and mother of the minor children of the decedent, filed a civil complaint against the City of Richmond, the Richmond Police Department, Former Acting Sergeant David D. Melvin, Detective

William J. Burnett, Detective Eschen Tunstall, Police Captain Carol S. Nicely, Former Acting Chief of Police Teresa P. Gooch, and City Manager Calvin D. Jamison.  The Complaint consists of eight counts. Count III of the Complaint sets forth a claim of wrongful death by virtue of gross negligence against Burnett.  Specifically, Count III avers that:

> By failing to pat down, search, or handcuff Mr. Johnson, or to communicate with Defendant Melvin about his interactions with Mr. Johnson before sending him outside, Detective Burnett committed the common law tort of gross negligence.  Detective Burnett's actions demonstrated indifference and constituted an utter disregard of prudence that amounted to a complete neglect of Mr. Johnson's safety.

Compl. ¶ 68.  The Complaint adds that "[a]s a direct and proximate result of the conduct and actions of Defendant Melvin and Defendant Burnett, Mr. Johnson suffered the injury of death."  Compl. ¶ 70.

Burnett previously filed a motion to dismiss Count III for failure to state a claim under Fed. R. Civ. P. 12(b)(6), contending that: (1) he owed no duty to the Plaintiff; (2) he did not proximately cause the death of the Plaintiff through his conduct; and (3) the facts, as pleaded, did not rise to the level of gross negligence.  The motion was denied.  Burnett has now moved for summary judgment under Fed. R. Civ. P. 56, alleging that there is no genuine issue as to any material fact and therefore he is entitled to judgment as a matter of law.  Burnett argues that, at a minimum, he exercised at least "some degree of care," and,

2

therefore, that he cannot be grossly negligent under Virginia law. Burnett additionally argues that there was no duty to pat down or handcuff Johnson or to have communicated with Melvin, and, therefore, there can be no viable claim for negligence as a matter of law.

## II.

The facts must be considered in the light most favorable to the Plaintiff, according her the benefit of all reasonable inferences and resolving factual disputes in her favor.

On May 17, 2002, David D. Melvin was designated Acting Sergeant of the Richmond Police Department's Community Intelligence Team ("CIT") and the Robbery Auto Theft Task Force ("Task Force"). The City of Richmond formed the Task Force in May 2002, in response to a series of robberies in the Southside area of Richmond. Melvin was designated to head the task force by Interim Chief of Police Teresa Gooch. Also, on May 17, 2002, the City, through Jamison and Gooch, announced that it was "aggressively attacking" crime and planned to announce a public safety operation that would send a "strong message" to criminals.

On the same day, the CIT and the Task Force developed leads about an alleged robbery in the Southside area, and a suspect by the name of Bryant Terry was apprehended. Melvin assisted in a search of Terry's truck and recovered from it an assault-style rifle. The registered owner of the truck was discovered to be

3

Verlon M. Johnson, Sr., the decedent in this case. During questioning Terry confessed that he had participated in a series of robberies and claimed that Johnson was also a participant. Terry also informed police officers that Johnson was known to carry a pistol in his pants pocket or waistband. Based on this information, it was decided to seek arrest warrants for Terry and Johnson.

Beginning that afternoon members of the Task Force conducted surveillance on the Johnson home. According to the defendants, two men were spotted leaving the driveway of the Johnson home in a truck. Police officers, including Burnett, stopped the truck and one of the occupants said that Johnson was in a shed behind his house cooking crack cocaine. He also said that Johnson's wife, children, and a friend were inside the home.

Burnett testified that he did not recall whether the truck occupants had mentioned whether Johnson was armed, but another officer recalled that they were informed that Johnson was armed. Defendants also have shown that Melvin announced over police radio that Johnson was "probably armed" and that he was armed "99% of the time." According to Melvin and Burnett, both Melvin and Tunstall informed members of the Task Force that Johnson was a suspect in multiple robberies and considered armed and dangerous.

After arrest warrants were issued, six police officers, including Melvin and Burnett, approached the Johnson home, deployed

around it, and proceeded to serve the arrest warrant on Johnson. Johnson, his wife, a friend, and the four Johnson children were all in the home at this time.

Melvin and Burnett knocked on the front door of the Johnson home and Mrs. Johnson answered the door.  The officers said that they needed to speak with her husband and asked where he was.  Mrs. Johnson said that her husband was upstairs and called to him.  At this time Burnett stepped into the home, but Melvin remained outside.  Burnett had not anticipated having to enter the home, but realized that it was necessary to do so because the configuration of the front door and the stairs required that the front door be closed for Johnson to descend to the first floor from the stairs. Burnett told Mrs. Johnson to put the children in the front room of the home.  Burnett then told Johnson to come downstairs.

Johnson, who was unarmed, came downstairs, without a shirt on and brushing his teeth.  As Johnson descended the stairs he put his hands up to the level of his head.  Johnson closed the front door as he descended the stairs because the door was obstructing his way.  After Johnson arrived on the first floor, Burnett instructed him to go outside.  Burnett did not pat down, search, or handcuff Johnson, nor did Burnett communicate at all with Melvin at this time.

Johnson walked outside the home with his hands still raised. The parties set forth two very different versions of what

transpired next.  The Plaintiff claims either that Johnson never lowered his hands, or that, if Johnson lowered his hands at all, they were never near his pocket.  An eyewitness, Theo Brinkley, a neighbor, claims that Johnson never lowered his hands.  The Defendants claim that, contrary to Melvin's instructions, Johnson stopped walking toward Melvin and lowered his right hand toward his right hip.  Melvin claims that he perceived that Johnson's hand went into his pocket.  Melvin also claims that he instructed Johnson to remove his hand from his pocket and as Johnson complied with that request, Melvin perceived the hand exiting at a different angle than it had entered, which he believed indicated that Johnson had a weapon.[1]  The parties agree that, at this point, Melvin raised and pointed his loaded .357 caliber automatic pistol at Johnson and fired a single shot into Johnson's chest.  Johnson fell back onto the porch and died.  A subsequent search of Johnson revealed that he had no weapon.  A post-mortem blood test revealed the presence of cocaine, morphine, and a heroin metabolite in Johnson's system.

---

[1]  Detective Oakes testified that Johnson reached into his pocket.  Detective Burnett testified that Johnson lowered his hands in an apparent effort to pull up his pants, but did not say that Johnson's hand went into his pocket.  The other three officers did not see if Johnson lowered his hands or not, but did hear Melvin's instructions and the shot and did not corroborate Melvin's story about what was said and the time between the instructions and the shot.

In the memorandum in support of Burnett's Motion for Summary Judgment, Burnett also sets forth his version of the facts as they transpired the evening Johnson was shot.   Burnett's account is taken from his deposition.   Burnett claims that he was informed that Johnson was possibly armed and therefore dangerous before he and Melvin approached the Johnson home.   Burnett and Melvin knocked on the door, intending to have Johnson exit the home where he would be arrested by the officers waiting outside.   As Johnson was descending the stairs it became apparent to Melvin and Burnett that Johnson would not be able to come down the stairs and exit the home without closing the front door.   Therefore, Burnett remained in the home and Melvin retreated outside.

Johnson descended with his hands raised, but lowered them once to pull up his pants.   Burnett looked Johnson over as he came down the stairs and did not see anything that indicated the presence of a weapon.   Burnett told Johnson to keep his hands up and to go outside where other officers would be waiting.

Burnett explained in his deposition that he did not pat Johnson down because he "would have placed myself in a bad situation."   Burnett explained that to have conducted a pat down of Johnson, it would have been necessary to reholster his gun and then he would be susceptible to being overtaken by Johnson or by the other suspect, who Burnett believed was present in the home. Burnett also stated that, because Johnson was compliant, he did not

7

see a need to pat Johnson down.  For the same reasons, Burnett did not handcuff Johnson.  After Johnson exited the home, preceding the shot, Burnett claims that he saw Johnson lower his hand to his waist in an effort to "pull up his pants or something."

## III.

The standards of review applicable to summary judgment motions are well-established.  Summary judgment is proper only when there are no genuine issues as to any material facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In making this determination the Court may rely upon "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits."  Fed. R. Civ. P. 56(c).

In reviewing a motion for summary judgment, a court must view the facts and any inferences drawn from these facts in the light most favorable to the nonmoving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Nguyen v. CNA Corp., 44 F.3d 234, 236 (4th Cir. 1995).  A fact is material when proof of its existence or nonexistence would affect the outcome of the case, and an issue is genuine if a reasonable jury might return a verdict in favor of the nonmoving party on the basis of such issue.  Anderson, 477 U.S. at 248.

The nonmoving party is entitled to have her version of all that is disputed accepted, all conflicts resolved in her favor, and

to have the benefit of all favorable legal theories invoked by the evidence.  M&M Med. Supplies and Serv., Inc. v. Pleasant Valley Hosp., Inc., 981 F.2d 160, 163 (4th Cir. 1992).  The party who bears the burden of proof on an issue at trial, however, cannot survive summary judgment without sufficient evidence to sustain his or her burden of proof on that point.  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).  These precepts and standards govern the resolution of Burnett's motion.

## IV.

In Count III, the Plaintiff seeks to recover under the Virginia wrongful death statute, Va. Code Ann. § 8.01-244, for the death of Verlon Johnson.  Under Virginia law, a Government agent, such as Burnett, performing an essential governmental function that calls for the exercise of discretion, such as executing an arrest warrant, is obligated to exercise reasonable care for the safety of others.  A Government agent, including Burnett, is entitled to protection under Virginia's precepts of sovereign immunity from liability for negligence in the exercise of the governmental function.  However, sovereign immunity does not protect an officer who acts in a grossly negligent fashion in the discharge of the discretionary governmental function.  Veney v. Ojeda, 321 F. Supp. 2d 733, 747 (E.D. Va. 2004); Colby v. Boyden, 241 Va. 125, 128-30, 400 S.E.2d 184, 186-87 (1991); James v. Jane, 221 Va. 43, 53, 282 S.E.2d 864, 869 (1980).

The parties agree that gross negligence is defined to be "utter disregard of prudence amounting to complete neglect of the safety of another." <u>Frazier v. City of Norfolk</u>, 234 Va. 388, 393, 362 S.E.2d 688, 691 (1987). In other words, gross negligence is "the absence of slight diligence, or the want of even scant care." <u>Id.</u> The degree of negligence involved is such as "will shock fair minded men although something less than willful recklessness." <u>Ferguson v. Ferguson</u>, 212 Va. 86, 92, 181 S.E.2d 648, 653 (1971).

Thus, to recover on Count III, the Plaintiff must establish that, in effectuating the arrest of Johnson, Burnett acted in utter disregard for the safety of others, exercising not even slight diligence or evincing the want of even scant care. Ordinarily, gross negligence is to be measured by an objective standard and thus whether there is gross negligence is "generally a factual matter for resolution by the jury and becomes a question of law only when reasonable people cannot differ." <u>Koffman v. Garnett</u>, 265 Va. 12, 15, 574 S.E.2d 258, 260 (2003); <u>Brown v. Mitchell</u>, 327 F. Supp. 2d 615, 647 (E.D. Va. 2004).

Although the parties have cited no authority addressing the issue of gross negligence in a factual context directly analogous to that presented in this case, there is authority to guide the analysis that must be made here. For example, the Supreme Court of Virginia has found that a police officer who hit a motorist while pursuing a fleeing lawbreaker in a high speed vehicle chase was not

grossly negligent because he "did exercise some degree of diligence and due care." Colby, 400 S.E.2d at 189.  That conclusion was grounded in a record showing that the officer had activated his lights and siren, had not been speeding excessively, and had swerved and applied brakes to avoid the collision. Id. In Meagher v. Johnson, 239 Va. 380, 383-84, 389 S.E.2d 310, 312 (1990), the Supreme Court of Virginia was confronted with a circumstance in which a police officer hit a fleeing arrestee with a police vehicle, while in pursuit of the arrestee.  The court found the absence of gross negligence, as a matter of law, was warranted because, when the officer saw the arrestee "dart into the parking lot," he had engaged his siren and emergency lights, and had "slammed on" the brakes to avoid hitting the fleeing arrestee. Id. at 311.

The Fourth Circuit, applying Virginia law, has held that a police officer who shot an unarmed arrestee after being told that someone "has got a gun!" was not acting in a grossly negligent fashion. McLenagan v. Karnes, 27 F.3d 1002 (4th Cir. 1994).  The Court of Appeals found that the officer, who shot the arrestee, believing him to be armed, was not acting with "complete neglect of McLenagan's safety." Rather, concluded the court, "he was simply faced with an impossible choice that had to be made in the flickering of an instant." Id. at 1009.

These authorities teach that reviewing courts must assess the officer's conduct to determine whether there is evidence of complete neglect or utter disregard of the safety of others, or whether there is proof that the officer acted with some care, even if he was negligent.  If reasonable persons could differ, summary judgment is not permitted.

The facts in this record do not show that reasonable persons could differ on the issue of gross negligence with respect to Burnett's conduct.  Clearly, the arrest of Johnson and how it was handled involved the discretionary judgments of several police officers, including Burnett.  Burnett could have chosen to handcuff or pat down Johnson and he could have communicated with Melvin.  Burnett chose not to do these things.  Obviously there is a possibility that had Burnett chosen to pat-down or handcuff Johnson or to communicate with Melvin that Johnson would be still alive.  Thus, Burnett's choice not to take any of these precautions may have been ill-advised and perhaps even careless.  But, that does not satisfy the standard for gross negligence, which requires utter disregard and the absence of even scant care.

The record here establishes that, when executing the arrest warrant, Burnett was aware that Johnson was considered dangerous and that he might be armed.  The arrest team also was aware that Johnson's family and others, at least one of whom might be another

12

robbery suspect, were inside the house.  Thus, the plan was to remove Johnson to the outside of the house as quickly as possible.

Burnett and Melvin approached the Johnson house, knocked on the door, and were met by Mrs. Johnson who advised that Johnson was upstairs.  Johnson was summoned to come down, either by the police or by Mrs. Johnson.  As Johnson began to descend to the first floor, Burnett realized that Johnson would not be able to arrive on the first floor and exit the house without first shutting the front door and then reopening it to get outside.  Johnson was much larger than Burnett.  If Burnett holstered his weapon to conduct a pat down or to handcuff Johnson, he might provide an opportunity for Johnson to gain the upper hand over Burnett and could expose Burnett and others in the house to a risk of a confrontation with the other suspect who was thought at the time to be in the house.

Burnett took action to remove Mrs. Johnson and the children from harm's way and was able to determine from a visual observation that Johnson did not appear to be armed.  Burnett also observed that Johnson was complying with instructions.  Having taken care to ascertain those facts, and finding it necessary to avoid giving Johnson an opportunity to seize the upper hand or exposing Burnett and the occupants of the house to the risk of a confrontation with the other, perhaps armed, suspect thought to be in the house, Burnett took the precautionary steps of directing Johnson to keep

13

his hands in the air and instructed him that there were police officers outside and that, accordingly, Johnson should go out and follow the instructions of the officers outside.

Under all the circumstances, it cannot be said that Burnett acted with utter disregard for the safety of Johnson.

Moreover, it is important to note that, at the time, Burnett was responsible not only for the safety of Johnson, but also for the safety of Mrs. Johnson and the children and the other suspect as well as Burnett himself.  Like the officer in <u>McLenagan</u>, Burnett was faced with a difficult choice that had to be made on the spot. The actions that he took were intended to protect Johnson, Mrs. Johnson, and the children, other occupants of the house, Burnett himself, and the other officers outside.  His conduct certainly evinces the taking of care to protect all of those interests. Whether a better choice could have been made is not the question. The issue is whether, in acting as he did, Burnett evinced utter disregard for the safety of others.  No reasonable jury could find that Burnett so acted.

The Plaintiff contends that Burnett was grossly negligent in failing to pat Johnson down for weapons, in failing to handcuff him and in failing to communicate with Melvin and the officers outside that Johnson was on his way out.  It may well have been advisable for these steps to have been taken.  But, there is nothing in the record to demonstrate that the failure to take these measures was

14

an utter disregard for the safety of Johnson and the others for whose safety Burnett also was responsible at the time.

The Plaintiff has pointed to no policy requiring a pat down or handcuffing or the communication that she says should have been effectuated.   The conduct of this arrest clearly was a discretionary matter and, in exercising the discretion with which he was entrusted, Burnett took care to deal with a difficult circumstance with which he was unexpectedly confronted.   Here, where Johnson appeared to be unarmed and had been acting in compliance with Burnett's instructions, it cannot be considered gross negligence to have dispatched him outside, the safest place to complete the arrest process.

## V.

For the foregoing reasons, there is no genuine issue of material fact respecting the level of care exercised by Burnett and no reasonable jury could find that he acted in a grossly negligent manner.   Accordingly, Burnett is entitled to summary judgment.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

_____/s/_____
                     Robert E. Payne
                     United States District Judge

Richmond, Virginia
Date:_____

15